**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| NSC PARTNERS, LLC, as successor to APPLIED NEUROSOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELI LILLY AND COMPANY, <br><br> Defendant. | Case No.: 1:24-cv-04804 <br><br> Honorable Elaine E. Bucklo <br><br> Honorable Magistrate M. David Weisman |

<u>**DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER PLAINTIFF NSC PARTNERS, LLC'S COMPLAINT**</u>

## <u>TABLE OF CONTENTS</u>

LEGAL STANDARD..................................................................................................6

I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL
JURISDICTION ...........................................................................................6

II.   THE FIRST-TO-FILE RULE SEPARATELY REQUIRES DISMISSAL OF
THIS ACTION, AS THE DELAWARE COMPLAINT WAS THE FIRST FILED..........9

III.  THE COMPLAINT FURTHER SHOULD BE DISMISSED FOR FAILURE TO
STATE A CLAIM .......................................................................................11

IV.  IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO
DELAWARE ..............................................................................................13

      A.    Transfer Is Warranted Under 28 U.S.C. § 1406(a):...............................13

      B.    In The Alternative, This Case Should Be Transferred Under 28 U.S.C. §
1404(a):................................................................................13

CONCLUSION......................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alt. Marine Constr. Co. v. U.S. District Court*
571 U.S. 49 (2013) ..............................................................................................14

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) ...........................................................................................12

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 239 (2017) .............................................................................................7

*Coinbase v. Suski*,
144 S. Ct. 1186 (2024) .......................................................................................12

*EEOC v. Concentra Health Servs., Inc.*,
496 F.3d 773 (7th Cir. 2007) ...............................................................................6

*Ellis v. Illinois*,
1992 WL 332293 (N.D. Ill. Nov. 6, 1992) .........................................................10

*Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp & Placement*,
326 U.S. 319 (1945) .............................................................................................7

*John Crane, Inc. v. Shein Law Ctr., Ltd.*,
891 F.3d 692 (7th Cir. 2018) ...............................................................................7

*Jones v. Niagara Frontier Transp. Auth.*,
722 F.2d 20 (2d Cir. 1983)..................................................................................11

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019)............................................................................................12

*McReynolds v. Merrill Lynch & Co.*,
694 F.3d 873 (7th Cir. 2012) ...............................................................................6

*Moorish Sci. Temple of Am. v. City of Berwyn*,
2011 WL 3898046 (N.D. Ill. Sept. 6, 2011) ......................................................10

*Philos Techs., Inc. v. Philos & D, Inc.*,
645 F.3d 851 (7th Cir. 2011) .............................................................................10

*Rogers v. City of Hobart, Ind.*,
966 F.3d 812 (7th Cir. 2021) ...............................................................................8

*In re Ryze Claims Sols., LLC.*,
    968 F.3d 701 (7th Cir 2020) ........................................................................14

*Scandia Down Corp. v. Euroquilt, Inc.*,
    772 F.2d 1423 (7th Cir. 1985) ..............................................................10, 11

*Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook Cnty.*,
    543 F.2d 32 (7th Cir. 1976) ........................................................................11

*Tamburo v. Dworkin*,
    2005 WL 8163300 (N.D. Ill. June 24, 2005) ............................................11

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ....................................................................7, 8

*United States v. Hagerman*,
    545 F.3d 579 (7th Cir. 2008) ......................................................................10

*United States v. Hagerman*,
    549 F.3d 536 (7th Cir. 2008) ......................................................................10

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................7, 8, 9

*Wilhelm v. BAM Trading Servs. Inc.*,
    2024 WL 2274326 (N.D. Ill. May 20, 2024) ............................................12

*Winking v. Smithfield Fresh Meats Corp.*,
    2023 WL 5387565 (N.D. Ill. Aug. 22, 2023) ..............................................6

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................................13, 14

28 U.S.C. § 1406(a) ................................................................................................13

**Other Authorities**

Fed. R. Civ. P. 12(b)(2) .............................................................................................6

Fed. R. Civ. P. 12(b)(6) .............................................................................................6

Defendant Eli Lilly and Company ("Lilly") respectfully moves to dismiss Plaintiff NSC Partners, LLC's ("Plaintiff" or "NSC Partners") Complaint (the "Complaint") and, in the alternative, requests that this action be transferred to the District of Delaware, where Lilly has filed a declaratory judgment action against Plaintiff.

Plaintiff filed an arbitration against Lilly on May 2, 2024, claiming it was entitled to receive certain milestone payments under a terminated agreement to which Plaintiff is not a party. When Lilly informed Plaintiff, a Delaware company, that its claims were not arbitrable, hours later, Plaintiff submitted the instant lawsuit seeking to compel arbitration and hoping to avoid the proper venue in Delaware. However, in its rush to get its Complaint on file, Plaintiff failed to follow jurisdictional, procedural and pleading requirements, each of which require dismissal of this suit. Specifically, Lilly moves to dismiss the Complaint on three independent grounds: (1) lack of personal jurisdiction; (2) pursuant to the first-filed rule; and (3) failure to state a claim. In the alternative, Lilly requests that this action be transferred to the District of Delaware, which has jurisdiction over both parties and was the recipient of the true first filed complaint, making it the proper forum for the determination that Lilly is not required to arbitrate with Plaintiff.

First, the Complaint should be dismissed because the Court does not have personal jurisdiction over Lilly. Lilly is an Indiana company and therefore not "at home" in Illinois. Plaintiff also has not pled any facts showing that this dispute is connected to Illinois.

Second, the Complaint separately should be dismissed under the first-filed rule. While Plaintiff submitted the Complaint on June 10, 2024, it was submitted *pro se*, in violation of Seventh Circuit jurisprudence requiring business entities to be represented by counsel. The Complaint was eventually filed on June 12, 2024, after Plaintiff finally secured local counsel in Illinois, but that was *after* Lilly filed its own lawsuit in Delaware on June 11, 2024 (the "Delaware Complaint"),

addressing the same arbitrability issues that are raised in the Complaint. Thus, the Delaware Complaint is indisputably the first-filed complaint and should be the operative one.

Third, the Complaint should be dismissed for failure to state a claim. To compel arbitration, there must be an arbitration agreement between the parties. Here, there is no such agreement between Lilly and NSC Partners, and Plaintiff has not identified one in its Complaint.

Finally, should the Court not decide to dismiss the Complaint on the aforementioned grounds, Lilly respectfully requests that the Court transfer the action to the District of Delaware, where there is a first-filed case regarding the same subject matter currently pending.

## **FACTUAL BACKGROUND**

Plaintiff, a Delaware limited liability company, filed an arbitration against Lilly, an Indiana company with Indianapolis headquarters, with JAMS in Chicago, Illinois on May 2, 2024. Although not material to the current motion, to set the current motion in context, set forth below is a basic recitation of the background to the dispute and the parties' interactions.

### **Albert Einstein College of Medicine-APNS Agreement**

On October 1, 1992, Albert Einstein College of Medicine of Yeshiva University ("AECOM") entered into an agreement with Applied NeuroSolutions, Inc. ("APNS")[1], through which AECOM granted APNS a worldwide, exclusive license to certain knowhow and patents that related to Alzheimer's disease (the "AECOM-APNS Agreement"). *See* Complaint ¶ 20.

Under the AECOM-APNS Agreement, APNS had the right to sublicense the knowhow and patents to third-parties, so long as it received AECOM's prior written consent. APNS took advantage of its right to grant sublicenses and entered into an agreement with Lilly in 2006, after

---

[1] The agreement is between AECOM and Molecular Geriatrics, Inc., a predecessor company to APNS.

receiving AECOM's written consent.

**Lilly-APNS Agreement**

Lilly entered into a Collaboration Agreement with APNS on November 27, 2006 (the "APNS Collaboration Agreement"), pursuant to which Lilly received a sublicense to AECOM's knowhow and patents related to Alzheimer's disease. *See* Complaint ¶ 32. The APNS Collaboration Agreement provided for Lilly to make certain payments to APNS upon achievement of certain milestones. *See id.* ¶ 42.

The APNS Collaboration Agreement also granted Lilly the right to terminate the agreement in the event of APNS's default, including if AECOM terminated the AECOM-APNS Agreement. *See id.* ¶ 44. In the event of a termination for default, and subject to other legal defenses, the APNS Collaboration Agreement provided that "LILLY shall continue to pay fifty percent (50%) of the fees, milestone payments and royalties which may become due under this Agreement subsequent to the effective date of termination (including those set forth in Sections 9(e) and 11)." *See id.* ¶ 17.

The APNS Collaboration Agreement was governed by the law of Indiana and provided that any disputes arising under the agreement will be resolved through arbitration. *See id.* ¶¶ 45-46.

**Termination of the Agreements with APNS**

In July 2010, AECOM terminated the AECOM-APNS Agreement due to APNS's failure to make payments owed under the agreement. *See id.* ¶ 68. This termination resulted in a loss of Lilly's rights to AECOM's knowhow and patents, as APNS's license from AECOM was terminated. On August 13, 2010, Lilly terminated the APNS Collaboration Agreement due to APNS's default and the termination of the AECOM-APNS Agreement. *See id.* ¶ 72.

**The Promissory Notes And Disposition of Collateral**

After termination of the APNS Collaboration Agreement, Mr. Bolloten made a series of

3

small loans to APNS, totaling $9,250. The loans occurred on August 26, 2010, September 24, 2010, and October 21, 2010—after AECOM and Lilly had terminated their respective agreements with APNS. *See* Complaint ¶¶ 76, 82, 85.

Concurrently with the loans, APNS entered into a series of promissory notes with Mr. Bolloten (the "Notes"). *See id.* The Notes designated the loans to be "senior to all existing debt of the Company" and "secured by all assets of the Company." *See id.* The Notes' repayment provisions stated that if APNS suspended business or became insolvent, the Notes would "become immediately due and payable." *See id.* The Notes did not contain any dispute resolution provisions and made no mention of requiring arbitration. *See id.* Plaintiff claims in the Complaint to have acquired rights under the APNS Collaboration Agreement pursuant to the Notes in connection with a UCC sale that took place in 2012, more than ten years ago. *See id.* ¶¶ 100-01.

**Communication from NSC Partners**

On January 8, 2018, eight years after Lilly terminated the APNS Collaboration Agreement and over five years after the UCC sale, Lilly received a letter from NSC Partners' counsel. *See id.* ¶ 118. In this letter, NSC Partners alleged that it had ownership rights in the terminated APNS Collaboration Agreement. *See id.* NSC Partners then made claims to certain milestone payments and asserted that it was owed $2,375,000, and that other payments may also be due and owing from Lilly. *See id.* In a subsequent letter dated July 25, 2018, NSC Partners claimed it was owed $3,875,000, the same amount it claims it is owed in the arbitration it recently filed against Lilly. *See id.* ¶¶ 120, 129. In communications between the parties, including in response to these letters, Lilly denied that NSC Partners has a security interest in the terminated APNS Collaboration Agreement and refused to make any payments to NSC Partners. NSC Partners did not respond or pursue its alleged claim to the milestone payments.

**The Arbitration**

After five more years of silence, on May 2, 2024, NSC Partners filed a Demand for Arbitration with JAMS in Chicago, Illinois. NSC Partners claims that it is APNS's "successor by foreclosure" and "is entitled to enforce APNS's rights under the Collaboration Agreement, as amended." Complaint, Ex. D ¶ 120. NSC Partners alleges that Lilly achieved four milestones after the termination of the APNS Collaboration Agreement and that NSC Partners is entitled to 50% of the corresponding milestone payments, "as successor to APNS." NSC Partners contends that it is owed $3,875,000 plus interest at the contractual rate. *Id.* at ¶ 130.

On June 10, 2024, Lilly informed NSC Partners that it did not believe that its claim was subject to arbitration. Hours later, Plaintiff improperly submitted a complaint, *pro se*, in this Court, seeking to compel arbitration and requesting a determination that it is entitled to arbitrate under the terminated APNS Collaboration Agreement, an agreement to which Plaintiff is not a party. The Complaint pleads no facts regarding the basis for jurisdiction over Lilly in Illinois; and instead admits that Lilly is an Indiana company with its principal place of business in Indianapolis. The only rationale for filing in Illinois is forum-shopping—in that, Plaintiff is trying to take advantage of a longer statute of limitations to excuse its delay in bringing suit.[2]

On June 11, 2024, Lilly filed the Delaware Complaint, requesting a declaration that NSC Partners (a Delaware resident) does not have any rights under the terminated APNS Collaboration Agreement and, separately, that NSC Partners' claims are barred by the statute of limitations. *See* C.A. No. 24-cv-688 (D. Del.), D.I. 1.

On June 12, 2024, Plaintiff secured counsel licensed in Illinois, after which, the Complaint

---

[2] However, even under the Illinois statute of limitations for contract claims, Plaintiff's claims are barred given that the UCC sale and the alleged failure to pay the milestone payments occurred more than ten years ago.

was properly filed in this Court, a day after Lilly filed the Delaware Complaint. *See* D.I. 3, D.I. 4, D.I. 5, D.I. 11. Plaintiff moved to dismiss or transfer the Delaware Complaint on June 25, 2024. Lilly opposed the motion on July 9, 2024, arguing on multiple grounds that the action should not be dismissed for reasons including that the Complaint in this action was improperly filed and that as an initial matter, it is within the province of a court to determine whether an arbitration agreement exists, as that is a gateway question that must be answered prior to arbitration.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint." *McReynolds v. Merrill Lynch & Co*., 694 F.3d 873, 878 (7th Cir. 2012). The plaintiff must describe the claim "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are insufficient to withstand a Rule 12(b)(6) motion to dismiss." *Winking v. Smithfield Fresh Meats Corp*., 2023 WL 5387565, at *2 (N.D. Ill. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## **ARGUMENT**

## I.    **THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**

The Complaint should be dismissed as there is no personal jurisdiction over Lilly in Illinois. *See* Fed. R. Civ. P. 12(b)(2). "The Illinois long-arm statute requires nothing more than the standard for federal due process." *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018). Due process mandates that a defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial

justice.'" *Int'l Shoe Co. v. State of Wash., Off. Of Unemployment Comp & Placement*, 326 U.S. 319, 316 (1945). Due process requires jurisdictional limits on a court's adjudicative power "principally [to] protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Personal jurisdiction requires either general or specific jurisdiction. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

General jurisdiction requires a defendant to have "continuous and systematic contacts" with a state, even if the action is not related to those contacts. *See id.* (citing *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416 (1984)). The threshold for general jurisdiction, however, is "high." *Id.* The defendant's "contacts must be sufficiently extensive and pervasive to approximate physical presence." *Id.* In 2017, the U.S. Supreme Court in *BNSF Railway,* held that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017). The Court described the "'paradigm' forums" in which a defendant corporation is at home as its place of incorporation and its principal place of business. *See id.* Here, there can be no dispute that Lilly does not have the sufficient contacts with Illinois to support an exercise of general jurisdiction. As Plaintiff acknowledges, *see* Complaint ¶ 16, Lilly is an Indiana company with its principal place of business in Indianapolis. *See* Anderson Decl.[3] ¶¶ 4-5. Therefore, Lilly is not subject to general jurisdiction in Illinois.

Further, there is no specific jurisdiction over Lilly in Illinois. Whether "a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the

---

[3] "Anderson Decl." refers to the contemporaneously filed Declaration Of Christopher Anderson In Support Of Plaintiff Eli Lilly and Company's Motion to Dismiss or Transfer Plaintiff NSC Partners, LLC's Complaint.

defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285. Whether a defendant has sufficient contacts with a forum to be subjected to litigation requires "view[ing] through the proper lens—whether the *defendant's* actions connect him to the *forum*." *Id.* at 289 (holding that the petitioner had not established that defendant had any "jurisdictionally relevant contacts" with the forum state).

"To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." *Tamburo*, 601 F.3d at 702. Exercise of specific jurisdiction is appropriate where "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed himself of the privilege of conducting business in [the] state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* In other words, Plaintiff "must demonstrate that [its] claims arise out of [Lilly's] contacts with Illinois and that those contacts are constitutionally sufficient." *Rogers v. City of Hobart*, 966 F.3d 812, 819 (7th Cir. 2021).

Plaintiff pleads no facts that support jurisdiction over Lilly in Illinois. The Complaint simply recounts that "Lilly is a pharmaceutical company organized under the laws of Indiana and headquartered in Indianapolis, with offices in 18 countries. Its products are sold in approximately 125 countries." Complaint ¶ 16. That Lilly's products are sold worldwide (and in Illinois) is entirely irrelevant to a determination of whether Lilly is subject to specific personal jurisdiction in Illinois in a dispute over a collaboration agreement.

This litigation centers on whether Plaintiff has the right to arbitrate a dispute with Lilly based on the defunct APNS Collaboration Agreement, an agreement to which Plaintiff is not a party but which Plaintiff claims to have acquired rights under (a contention that Lilly disputes).[4] The Complaint alleges no facts demonstrating Illinois has any connection to Lilly, let alone any connection related to whether Plaintiff acquired rights under the APNS Collaboration Agreement. When looking "through the proper lens"—whether [Lilly's] actions connect it to Illinois—it is clear that Lilly has no jurisdictionally relevant contacts with Illinois, as a determination of Plaintiff's purported rights under the terminated APNS Collaboration Agreement does not involve Illinois. *See Walden*, 571 U.S. at 289. As such, there is no personal jurisdiction over Lilly in Illinois and the Complaint should be dismissed.

## II.  THE FIRST-TO-FILE RULE SEPARATELY REQUIRES DISMISSAL OF THIS ACTION, AS THE DELAWARE COMPLAINT WAS THE FIRST FILED

The Complaint should separately be dismissed under the "first-to-file" rule. Currently pending in Delaware is a suit between the same parties pertaining to the same subject matter. While the Complaint was submitted here *pro se* on June 10, 2024, it was not *filed* until June 12, 2024, which was one day after Lilly filed its Complaint in Delaware. *Compare* D.I. 1, D.I. 11 (emphasis added) *with* C.A. No. 24-cv-688 (D. Del), D.I. 1. Therefore, the Delaware Complaint, which was indisputably filed on June 11, 2024, was the first filed and—under the first-filed rule—is the operative complaint.

The Complaint was not filed on June 10, 2024 because Plaintiff is a limited liability company and, under Seventh Circuit jurisprudence, corporations and limited liability companies

---

[4] Plaintiff claims to have stepped into the APNS Collaboration Agreement pursuant to the Notes, but those Notes do not contain any arbitration clause.  Thus, whether Plaintiff stepped into the APNS Collaboration Agreement should be litigated in court once the proper venue (Delaware versus Illinois) is decided.

cannot represent themselves. "[A] corporation . . . is legally incapable of appearing in court unless represented by counsel." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857-58 (7th Cir. 2011). In other words, in the Seventh Circuit, "corporations must appear by counsel or not at all." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1427 (7th Cir. 1985). This rule encompasses limited liability companies as well. *See United States v. Hagerman*, 545 F.3d 579, 582 (7th Cir. 2008); *United States v. Hagerman*, 549 F.3d 536, 537 (7th Cir. 2008) ("[W]e ruled that a limited liability company . . ., like a corporation, cannot litigate in a federal court unless it is represented by a lawyer."). As described by the Seventh Circuit, "the right to conduct business in a form that confers privileges, such as the limited personal liability of the owners for tort or contract claims against the business, carries with it obligations one of which is to hire a lawyer if you want to sue or defend on behalf of the entity. *Pro se* litigation is a burden on the judiciary and the burden is not to be borne when the litigant has chosen to do business in entity form." *Hagerman*, 545 F.3d at 581-82 (citations omitted) (dismissing appeal where the appellant, a limited liability company, was not represented by counsel).

Courts must dismiss complaints submitted by business entities on a *pro se* basis. *See Ellis v. Illinois*, 1992 WL 332293, at *3 (N.D. Ill. Nov. 6, 1992) (holding that "an additional reason that the court must dismiss plaintiffs' complaint" was that a non-lawyer was representing a corporation); *Moorish Sci. Temple of Am. v. City of Berwyn*, 2011 WL 3898046, at *3-4 (N.D. Ill. Sept. 6, 2011) (dismissing complaint where non-lawyer attempted to file claim on behalf of a corporation); *Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook Cnty.*, 543 F.2d 32, 33-34 (7th Cir. 1976) (affirming district court's dismissal of complaint where corporation was represented by a non-lawyer). Further, courts do not permit parties to circumvent the rule that business entities must be represented by counsel. *See Scandia Down Corp.*, 772 F.2d at 1427

(refusing to allow a corporation to "manipulate[e] things so that it has no counsel"); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) (describing how federal courts have "disapproved any circumvention of the rule by the procedural device of an assignment of the corporation's claims to the lay individual."); *Tamburo v. Dworkin*, 2005 WL 8163300, at *2 (N.D. Ill. June 24, 2005) (concluding that the assignment of a company's claims to an individual did "not excuse the requirement that those claims be prosecuted through a duly licensed attorney").

Despite the clear precedent prohibiting limited liability companies from litigating without counsel, Plaintiff submitted a *pro se* complaint on June 10, 2024. This was Plaintiff's improper attempt to rush to the courthouse, before it secured local counsel, in a blatant effort to file prior to Lilly. Plaintiff's attempt to circumvent well-established rules should not be rewarded by considering its improperly submitted Complaint to be the "first-filed." Plaintiff's Complaint was not actually filed until June 12, 2024, when it secured the required counsel, which post-dates Lilly's June 11, 2024 Delaware Complaint. Therefore, the Delaware Complaint is the first to be filed, and is the operative complaint.

## III.   THE COMPLAINT FURTHER SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

If the Court declines to dismiss for lack of jurisdiction or under the first-filed rule, Plaintiff's Complaint still should be dismissed for a third reason—as it fails to properly state a claim against Lilly. Simply put, arbitration is an issue of contract but Plaintiff nowhere alleges in its Complaint an agreement whereby Lilly agreed to arbitrate any disputes, or the issue of arbitrability, with Plaintiff.

"The Federal Arbitration Act mandates that courts enforce valid, written arbitration agreements, reflecting a federal policy that favors arbitration and places arbitration agreements on equal footing with all other contracts." *Wilhelm v. BAM Trading Servs., Inc.*, 2024 WL 2274326,

at \*2 (N.D. Ill. May 20, 2024). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). After all, the underlying basis for arbitration is that "arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019). A court must, therefore, "before referring a dispute to an arbitrator," "determine[] whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) Where "the question is whether the parties agreed to send the given dispute to arbitration . . . per usual, *that* question must be answered by a court." *Coinbase v. Suski*, 144 S. Ct. 1186, 1193 (2024) (emphasis in original).

Here, the Complaint fails to identify a contract in which Lilly agreed to arbitrate any dispute with Plaintiff. That is because one does not exist. Under the APNS Collaboration Agreement, which Plaintiff uses to justify its arbitration demand, Lilly only agreed to arbitrate with APNS. Lilly did not agree to arbitrate anything with Plaintiff nor did it agree to arbitrate the issue of whether Plaintiff properly acquired APNS's rights under the APNS Collaboration Agreement. *See AT&T Techs.*, 475 U.S. at 648. Further, Plaintiff claims to have stepped into the APNS Collaboration Agreement pursuant to the Notes, *see* Complaint ¶ 1, but those Notes do not contain any arbitration clause.

As "arbitration is a matter of contract," *Henry Schein*, 586 U.S. at 67, and Plaintiff has failed to show an agreement to arbitrate between Lilly and Plaintiff, Plaintiff's request for an order compelling arbitration and a declaratory judgment regarding a determination of its entitlement to arbitration, fails to state a claim.

## IV.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO DELAWARE

Should the Court not dismiss this action, Lilly requests that this action be transferred to the District of Delaware, where there is proper jurisdiction over both parties and where an action regarding the same issues is currently pending.

### A.    Transfer Is Warranted Under 28 U.S.C. § 1406(a):

As Illinois is an improper venue for this action, the Court should transfer it to the District of Delaware. Under 28 U.S.C. § 1406(a):

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

Plaintiff is a Delaware limited liability company, and is at home in Delaware. *See* Complaint ¶ 15. This action is only in Illinois due to Plaintiff's premature dash to the courthouse and impermissibly submitted *pro se* Complaint to try to attain first filed status. The interest of justice demands that this action, initiated improperly and unjustly, should not be permitted to continue in this Court. Instead, if not dismissed outright, the instant case should be transferred to Delaware where there is jurisdiction over all parties and where the rightful complaint was first filed.

### B.    In The Alternative, This Case Should Be Transferred Under 28 U.S.C. § 1404(a):

In the alternative, the instant action should be transferred to Delaware under 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). A district court is required to "evaluate both the convenience of the parties and various public-interest considerations." *Alt. Marine Constr. Co. v. U.S. District Court*, 571 U.S. 49, 62 & n.6 (2013); *see also In re Ryze Claims Sols., LLC*., 968 F.3d 701, 707-08 (7th Cir 2020). A district court has discretion "to adjudicate motions for transfer according to a . . . case-by-case consideration of convenience and fairness" and a "flexible and individualized analysis" is allowed. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010).

Here, the convenience of the parties favors Delaware. Neither party is located in Illinois; Lilly is headquartered and incorporated in Indiana. *See* Anderson Decl. ¶¶ 4-5. Plaintiff, as mentioned above, is a Delaware limited liability company whose sole member, upon information and belief, resides in California. Litigating in Delaware would permit Plaintiff to litigate in its home state. In addition, there is no dispute that Plaintiff is subject to jurisdiction in Delaware.

The interest of justice also favors transfer of this case to Delaware. The interest of justice "may be determinative," *see Rsch. Automation*, 626 F.3d at 977-78, and in this case, it should be. Local interest supports litigating this case in Delaware, as Plaintiff is a Delaware limited liability company and Delaware has more of an interest in litigating issues involving Delaware companies than does this Court. Further, Plaintiff's improper maneuvers to preempt Lilly's suit should not be rewarded.

As Illinois is an improper and inconvenient forum, which Plaintiff chose in its rush to submit a complaint to try to take advantage of Illinois' statute of limitations, the case should be transferred to Delaware, which is a proper forum and where the suit was rightfully filed first.

## **CONCLUSION**

For the reasons set forth above, the Court should dismiss the Complaint. Alternatively, the

Court should transfer this case to Delaware.

KIRKLAND & ELLIS

*/s/ Ryan Moorman*

OF COUNSEL:                              Ryan Moorman
                                          KIRKLAND & ELLIS LLP
David Lender (*Pro hac vice pending*)     333 West Wolf Point Plaza
WEIL, GOTSHAL & MANGES LLP                Chicago, IL 60654
767 Fifth Avenue                          Tel: (312) 862-2000
New York, New York 10153                  Fax: (312) 862-2200
Telephone: (212) 310-8000                 Email: Ryan.Moorman@kirkland.com
Facsimile: (212) 310-8007
David.Lender@weil.com

                                          *Attorneys for Defendant Eli Lilly and*
Dated:  July 15, 2024                     *Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Ryan Moorman