```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION
```

NSC Partners, LLC, as            )
successor to Applied             )
Neurosolutions, Inc.,            )
                                 )
            Plaintiff,           )
                                 )
                                 )
      v.                         )   No. 24 C 4804
                                 )
                                 )
Eli Lilly and Company,           )
                                 )
            Defendant.           )

<u>Memorandum Opinion and Order</u>

At the center of this suit is a Collaboration Agreement entered into between Applied NeuroSolutions, Inc. ("APNS") and Eli Lilly and Company ("Lilly"). Under that agreement, including its amendments, APNS and Lilly collaborated in the development of a drug to treat Alzheimer's disease. Two aspects of the Collaboration Agreement are particularly salient to this suit: first, Lilly was required under the agreement to pay APNS upon reaching certain drug development milestones; second, the agreement provides that any disputes arising under it must be arbitrated.

NSC Partners, LLC ("NSC") claims that it acquired APNS' rights under the Collaboration Agreement pursuant to a foreclosure sale in 2011. When NSC learned that Lilly's obligations to pay under the agreement were triggered by the completion of certain drug

development milestones, it demanded payment from Lilly. Lilly refused, so NSC filed a demand for arbitration in Chicago. Lilly has maintained, however, that arbitration is not appropriate until a court can determine a gateway issue: whether NSC can invoke the Collaboration Agreement's arbitration provisions as a non-signatory; in other words, what rights NSC has under the Collaboration Agreement. NSC asserts in its complaint that the issue of arbitrability in this case is for the arbitrator to decide. However, both parties now agree that whether NSC obtained rights under the Collaboration Agreement is a question for the court. *See O'Connor v. Ford Motor Co.*, No. 19-cv-5045, 2023 WL 130522, at *5-6 (N.D. Ill. Jan. 9, 2023).

NSC filed this suit to compel arbitration pursuant to a provision of the Federal Arbitration Act, 9 U.S.C. § 4, and for a declaratory judgment that it is entitled to arbitration of the underlying dispute under the Declaratory Judgment Act, 28 U.S.C. § 2201. For its part, Lilly filed its own suit in federal court in the District of Delaware, seeking a declaratory judgment that NSC has no rights under the Collaboration Agreement.

Lilly now moves to dismiss on several grounds, including lack of personal jurisdiction, application of the first-to-file rule, and failure to state a claim. Before reaching those arguments,

2

however, the issue of subject-matter jurisdiction warrants comment.[1]

I must assure myself of subject-matter jurisdiction even though neither party raises the issue. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The complaint asserts diversity jurisdiction under 28 U.S.C. § 1332.[2] A "naked declaration" that the parties are of diverse citizenship, like the one that appears in NSC's complaint, "is never sufficient." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007). Instead, a complaint must set forth the citizenships of each party. *Id.* The complaint here does so with respect to Lilly which, as a corporation, is a citizen

---

[1] "[J]urisdictional questions ordinarily must precede merits determinations in dispositional order," but as between addressing subject-matter jurisdiction and personal jurisdiction, "there is no mandatory 'sequencing of jurisdictional issues.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing and quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).

[2] The complaint does not purport to say jurisdiction is proper under the federal question jurisdictional statute, 28 U.S.C. § 1331, and it is not. Although both 9 U.S.C. § 4 and 28 U.S.C. § 2201 are federal statutes, they do not independently confer federal jurisdiction. *See Vaden v. Discover Bank*, 556 U.S. 49, 59 (2009) (observing that the Federal Arbitration Act, including 9 U.S.C. § 4, is "something of an anomaly in the realm of federal legislation" as it "bestow[s] no federal jurisdiction but rather require[es] [for access to a federal forum] an independent jurisdictional basis" (citations and internal quotation marks omitted; alterations in original)); *Ameritech Benefit Plan Comm. v. Commc'n Workers of Am.*, 220 F.3d 814, 818 (7th Cir. 2000) ("It is of course true that the Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of subject matter jurisdiction." (citations omitted)).

3

of the states in which it is incorporated and headquartered--here, both Indiana. Compl., ECF 1 ¶ 16. The analysis with respect to NSC's citizenship is different because it is a limited liability company. As such, it "is the citizen of the states where its owning members are citizens." *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 565 (7th Cir. 2021) (citing *West v. Louisville Gas & Elec. Co.*, 951 F.3d 827, 829 (7th Cir. 2020)). But the complaint does not reveal which state Gregory Bolloten, NSC's sole member, is a citizen of, instead identifying NSC as a "Delaware limited liability company" with a Tennessee address, details which are meaningless for purposes of subject-matter jurisdiction. Compl. ¶ 15.

When there is insufficient information in a complaint invoking diversity jurisdiction, courts may "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Miller v. Fed. Deposit Ins. Corp.*, 738 F.3d 836, 840 (7th Cir. 2013) (citations and internal quotation marks omitted). Here, in connection with the motion to dismiss and NSC's separate motion for partial summary judgment, NSC has submitted a declaration from Bolloten in which he asserts he is a citizen of Tennessee. Bolloten Decl., ECF 25 ¶ 1. This suggests the parties are indeed of diverse citizenship. However, citizenship is determined as of the time of filing. *See*

*Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("Whether § 1332 supplies subject-matter jurisdiction must be ascertained at the outset; events after the suit begins do not affect the diversity jurisdiction." (citations omitted)). The complaint was filed on June 10, 2024, but Bolloten's declaration was signed on August 2, 2024. Presumably, Bolloten's citizenship did not change during that time, but for the removal of doubt, NSC should file an affidavit confirming Bolloten's citizenship at the time the complaint was filed.

In its motion to dismiss, Lilly argues it cannot be subject to personal jurisdiction in this case, any exercise of which must comport with both the Illinois long-arm statue and the Fourteenth Amendment's Due Process Clause. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The Illinois long-arm statute permits the exercise of jurisdiction to the full extent consistent with federal due process, so the two inquiries merge. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials"--including affidavits and other evidence submitted--"rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* (citing *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). I "take as true all well-pleaded facts

5

alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.* (citing *Purdue Rsch. Found.*, 338 F.3d at 782).

Personal jurisdiction may be either general or specific, but NSC makes no attempt to show that Lilly is subject to general jurisdiction in Illinois, so only specific personal jurisdiction is at issue. The Seventh Circuit has articulated "three essential requirements" for establishing specific personal jurisdiction. *Felland*, 682 F.3d at 673. They are: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (citations omitted).

Lilly maintains that NSC must demonstrate contacts between Lilly and Illinois with respect to NSC's assertion that it acquired rights under the Collaboration Agreement. That frames the relevant contacts too narrowly. Fundamentally, NSC is seeking to vindicate rights it claims to have under the Collaboration Agreement. Thus, it is Lilly's contacts with respect to that agreement--which itself contains the arbitration provision at issue in this suit--that count. Whether NSC obtained rights under the Collaboration Agreement is no doubt central to the question of arbitrability,

6

but it is better left for consideration only once jurisdiction is secure.

Still, NSC bears the burden of demonstrating the necessary contacts, either through the complaint's allegations or through evidence it has submitted. For starters, the fact that Lilly contracted with an Illinois entity alone is insufficient to subject Lilly to personal jurisdiction here. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, NSC must demonstrate that the contractual relationship "create[d] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Courts in this district have identified several factors that bear on specific personal jurisdiction in breach of contract cases. NSC agrees these are the relevant factors to consider, and they are: (1) "who initiated the transaction"; (2) "where the negotiations were conducted"; (3) "where the parties executed the contract"; (4) "where the defendant would have performed the contract"; (5) "whether the defendant was ever physically present in Illinois in connection with the contract"; (6) "whether payment was to be made in Illinois"; and (7) "the occurrence of telephone calls or other communications to and from Illinois." *1st Bank Card Servs., Inc. v. Patel*, No. 17-cv-8744, 2018 WL 3608545, at *3 (N.D. Ill. July 27, 2018) (citations and internal quotation marks omitted).

7

NSC maintains that Lilly had multiple contacts with APNS in connection with the Collaboration Agreement, listing the following in its response brief: Lilly provided copies of the original agreement and the two amendments to APNS in Illinois; Lilly "had to have" engaged in "some negotiations" with APNS "at a minimum" through electronic communications sent to APNS in Illinois; the agreement provided Lilly with rights to technology "controlled by an Illinois company, APNS"; Lilly purchased APNS stock and made annual payments to APNS; Lilly had bi-weekly teleconferences with APNS personnel in Illinois; Lilly advised APNS' former CEO and CFO David Ellison, "in Illinois," that the agreement would be terminated and then sent notice of that termination to APNS in Illinois. Resp., ECF 21 at 14.

But "assertions in briefs are not evidence," *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015), and NSC does not cite to evidence supporting many of these supposed contacts.[3] Those that do have some support include that Lilly made payments to APNS under the Collaboration Agreement, *see* Exhs. FF-II to Bolloten Decl., ECF 25-32, 25-33, 25-34, 25-35; and that Lilly emailed notice of

---

[3] Courts are not required to sift through all the evidence submitted in search of justification for a party's position. Instead, parties should cite to record evidence supporting their assertions. *Cf. Gross v. Town of Cicero*, 619 F.3d 697, 702–03 (7th Cir. 2010) (striking sections of summary judgment briefs "that lack direct citation to easily identifiable support in the record" (citations omitted)).

termination of the Collaboration Agreement to Ellison, listing in that notice an Illinois address for Ellison, *see* Bolloten Decl. ¶ 59 (citing Exh. L, ECF 25-12). That evidence speaks only to the sixth and seventh personal jurisdiction factors listed above, and sheds no light on the first five factors.

That evidence alone is not enough. *See, e.g., CF Indus. v. Ben-Trei, Ltd.*, No. 09 C 1353, 2009 WL 2765972, at *3 (N.D. Ill. Aug. 27, 2009) (no jurisdiction in breach of contract suit where contacts included that plaintiff was an Illinois corporation, defendant communicated with plaintiff in Illinois, defendant sent executed contract to plaintiff in Illinois, and electronic payment made by defendant to plaintiff's Illinois bank account); *MAC Funding Corp. v. Ne. Impressions, Inc.*, 215 F. Supp. 2d 978, 981 (N.D. Ill. 2002) (no jurisdiction in breach of contract case where there was no evidence that defendant initiated the transaction, that negotiations occurred in Illinois, that contract was executed in Illinois, or that defendant performed contract in Illinois other than sending payment there).

However, NSC has sufficiently identified in its brief contacts which, if supported, would subject Lilly to jurisdiction in this state. Accordingly, I will permit NSC to engage in limited discovery to substantiate these assertions. This is particularly appropriate given that Lilly, who allegedly engaged directly with

9

APNS on the Collaboration Agreement, likely has readier access to the necessary information than NSC, who entered the picture later.

The parties are instructed to engage in limited jurisdictional discovery, which shall close 60 days after entry of this order. NSC is also instructed to file a supplemental declaration from Bolloten establishing his citizenship at the time the complaint was filed within 60 days of this order. In the meantime, while jurisdiction is still at issue, Lilly's motion to dismiss and NSC's motion for partial summary judgment are denied without prejudice, with leave to refile after the issue of jurisdiction is resolved.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: March 12, 2025